RECEIVED
IN ALEXANDRIA, LA.

JUL 0 2 2010

TONY R. MOORE CLERK
BY_____
          DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


GLORIA ABRAHAM
     o/b/o the minor child J.C.G.

                         CIVIL ACTION NO. 09-1394

VERSUS

                         DISTRICT JUDGE DEE D. DRELL
                         MAGISTRATE JUDGE JAMES D. KIRK
MICHAEL ASTRUE, COMMISSIONER
     OF SOCIAL SECURITY


<u>REPORT AND RECOMMENDATION</u>


Gloria Abraham ("Abraham") protectively filed an application for Social Security Income benefits ("SSI") on behalf of her minor child, J.C.G., on August 21, 2007 (R. 103-106, 116).  She noted J.C.G. suffered from ADHD, a behavioral disorder, mood swings and a temper (R.8).

The claim was initially denied on November 21, 2007 and Abraham timely filed a request for hearing before an Administrative Law Judge ("ALJ") (R. 64-70).  The ALJ held a hearing on January 7, 2009 and issued an unfavorable decision on January 30, 2009 (R. 16-18). Abraham sought review by the Appeals Council in February of 2009 but review was denied (R.12-15, 160-169, 1-3).  Accordingly, the decision became the final decision of the Commissioner of Social Security ("the Commissioner").  Abraham then filed the instant action seeking judicial review of the Commissioner's decision.

To qualify for SSI under Title XVI of the Social Security Act, a claimant must file an application and be an "eligible individual" as defined in the Act.   42 U.S.C. §1381(a).   Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. §1382(a).   To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months.   Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.   42 U.S.C. §1382(a)(3).

<u>Summary of Pertinent Facts</u>

A hearing was held before the ALJ on January 7, 2009.   J.C.G., his attorney and mother attended the hearing (R. 34).   At the time of the hearing, J.C.G. was 15 years old and was enrolled in the eighth grade in regular classes (R. 34, 37).   J.C.G. testified that he had friends and was getting along with his teachers despite having problems with them the year before (R. 38).

From August of 2007 through March of 2008, J.C.G. was suspended nine times and was expelled from Pineville Middle School in March of 2008 for marijuana use (R. 312, 319).   J.C.G. entered drug rehabilitation programs twice due to marijuana use which he testified was ongoing at a rate of once or twice a week (R. 39, 43, 441).

2

J.C.G. was diagnosed with ADHD in the fifth grade and that diagnosis was changed a few years later to severe depression with psychotic episodes (R.55). J.C.G. testified that despite being diagnosed with depression, he did not feel depressed (R. 49). This sentiment was echoed by J.C.G. during the many interviews he underwent by mental healthcare professionals (R. 260, 286). Though he was committed to Crossroads Regional Hospital for suicide attempts (the first for waking into traffic (R.46) and the second for grabbing his mother's pills and threatening an overdose), J.C.G. repeatedly expressed that he was not suicidal (R. 56, 260, 286, 335-337, 362-364).

Records from a September 2007 admission to Crossroads Regional Hospital reveal that he was diagnosed with major depressive order which was recurrent and severe with psychotic features, intermittent explosive disorder and a conduct disorder(R. 208, 218). He also portrayed antisocial traits as he was stealing. His GAF score upon admission was 29 (R. 208, 218). J.C.G. was prescribed Lexapro in the morning to address his depression and Risperdal in the evenings to address his psychosis and intermittent explosive disorder (R. 208,220). Upon discharge, J.C.G. had a GAF score of 85+ and a prognosis of fair to good (R. 364).

Records from J.C.G.'s stay at Crossroads from October 17 through 22 of 2008 show he was diagnosed with intermittent explosive disorder, a conduct disorder and canibus use. Though his

3

GAF score was 30 at the time he was admitted, it was 55-60 at the time of discharge and his prognosis was good (R. 337-340).

At the request of Disability Determination Services, J.C.G. was seen by James W. Quillen, PH.D.,M.P.,ABMP ("Quillen") on November 7, 2007.  Quillen interviewed J.C.G., obtained a history and performed a mental status examination (R. 285).  During the interview, J.C.G. denied a suicide attempt by walking into traffic. Instead, he advised that he had blackouts which his parents thought might be a result of taking Vyvanse for attention deficit disorder (R. 285).  The report further noted that J.C.G.'s hyperactive, disruptive and disrespectful behavior began in approximately the fourth grade and had increased with intensity over the years. Quillen noted J.C.G suffered from mild depression and diagnosed him with intermittent explosive disorder, disruptive behavior disorder and incipient conduct disorder, determined that his prognosis is poor and advised mood stabilizers are required (R. 286).

Jeanne Lachney, J.C.G.'s math teacher, completed a teacher questionnaire (the "Questionnaire") (R. 152-159).  Lachney stated she knew J.C.G. for six weeks and during that time, there was an unusual amount of absenteeism due to suspensions (R. 152).  Lachney answered numerous questions regarding the several domains and noted no real problems in acquiring and using information, attending and completing tasks, interacting and relating with others or caring for himself.  She noted that she had no knowledge of his medical

conditions or medications.  She did not need to implement behavior modification strategies with him because he wasn't present enough and though she knew he was suspended, she did not know why.

The ALJ rendered a decision on January 30, 2009 in which he found J.C.G. was an adolescent from the time of filing through the date of decision (R. 19-31).  J.C.G. had not engaged in substantial gainful activity during the relevant time period.  His severe impairments included intermittent explosive disorder/opposition defiant disorder, conduct disorder, and substance abuse (marijuana)disorder (R. 22).  Neither his impairments nor a combination thereof met or medically equaled one of the listings (R. 25).  None of his impairments or combination thereof functionally equaled a listing (R. 26).  Accordingly, the claimant was not disabled at any time since the filing of the application for SSI benefits (R. 31).

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards.  McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion.  It must be more than a scintilla but

need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5 th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. However, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340, 343-344 (5th Cir. 1988); citing, Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). Also, Dellolio, 705 F.2d at 125.

<u>Issue</u>

Abraham raises the following issue for appellate review:

6

The ALJ erred in finding that J.C.G.'s combination of impairments did not functionally equal a listed impairment.[1]

If a child's impairments do not meet or medically equal a listed impairment, a functional limitation assessment is done to determine whether the functional limitations are disabling (functional equivalence for children). 20 C.F.R. §416.926a. In the functional equivalence approach, whether a child meets the "listing-level severity" standard is dependent upon whether the child has marked limitations in two broad areas of development or extreme limitations in one of those areas. 20 C.F.R. §416.926a. The broad areas of functioning are called "domains" and they include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being.

A marked limitation is present where the impairment interferes seriously with one's ability to independently initiate, sustain, or complete activities; "marked" also means a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. §416.926a(e)(2).

---

[1] Though not listed as an assignment of error, claimant also contends the ALJ erred by finding J.C.G. did not suffer from ADHD or Major Depressive Disorder. In support, claimant cites records from two inpatient hospitalizations which note those diagnoses. The ALJ noted that claimant discontinued his medications for ADHD (and no others were prescribed) and two other doctors, Dr. Folarin and Dr. Quillen, noted that J.C.G no longer suffered from Major Depressive Disorder. Substantial evidence supports the ALJ's finding. Thus, no error occurred.

An extreme limitation is present where one's impairment interferes very seriously with one's ability to "independently initiate, sustain, or complete activities."   20 C.F.R. §416.926a(e)(3).

Abraham argues that J.C.G. should be found disabled because he has "marked" limitations in at least two domains and/or "extreme" limitations in at least one domain.  The domains in which Abraham contends J.C.G. has marked limitations include Acquiring and Using Information, Attending and Completing Tasks and Caring for Yourself.  She contends that the ALJ was correct in determining that J.C.G. had marked limitation in Interacting and Relating with Others but she felt that his limitation was more likely extreme.

Abraham argues that the ALJ relied "in large part" upon the Questionnaire from Jeanne Lachney when he made his finding rather than basing it on all of the medical and non-medical evidence.  While the ALJ does indeed quote from and rely upon the Questionnaire, it is also evident that he examined the entire record noting various excerpts such as medical records from J.C.G's stays at Crossroads Regional Hospital and outpatient therapy at Bayou Rapides, the diagnosis made by Quillen, suspensions from school and other assessments such as the one conducted by Louisiana Department of Social Services, Office of Family Support (R. 23-26).

The ALJ examined each domain independently noting examples of limited functioning in each.  Though the ALJ did not set forth a string of evidence in support of his findings for each domain, the

decision as a whole contains the necessary support.

Abraham argues that repeated suspensions and resulting absences from school as well as the fact that he has failed two grades is evidence of J.C.G's marked limitations. However, J.C.G.'s own testimony indicated he was getting along with his teachers, his attendance was good and peers and was performing well in school (R. 352). Accordingly, the more current evidence indicated that J.C.G. was not having serious difficulties with independently initiating, sustaining, or completing activities in these domains as his attendance, grades and relationships were improving.

Abraham further contends J.C.G. has marked limitations in the domain of caring for yourself. In support, she notes that he attempted suicide twice and his medical records prove he had serious difficulties coping with stress, following safety rules, taking medications as prescribed, responding to circumstances in safe and appropriate ways and making decisions that did not endanger him.

Medical records from September 2006, specifically an Assessment performed at Bayou Rapides Rehab, showed J.C.G. was "at risk for significant risk of harm" due to "daily agitation, police involvement, suicide attempts, ADHD, depression and poor impulse control" (R.225). In September of 2007, J.C.G. attempted to commit suicide by walking into traffic. J.C.G. was committed to

Crossroads Regional Hospital because of the suicide attempt and the records reflect "poor insight, judgment and impulse control." (R.217). However, at the time of release, his prognosis was fair to good and his GAF score increased from 29 to 85+.

Thereafter, in October of 2008, J.C.G threatened to commit suicide after grabbing his mother's pills. He was again committed to Crossroads Regional Hospital as he was viewed to be a potential harm to himself and his insight, judgment and impulse control were all poor (R. 340). Yet, five days later, it was noted that his insight and judgment had improved significantly; he was more compliant with the rules and regulation; and, he promised to refrain from any inappropriate behavior (R. 335-336). Further, at the time of the hearing in January of 2009, J.C.G. noted that his grades were improving, his relationships with teachers were better and he had a group of friends.

Finally, Abraham contends that the ALJ should have found J.C.G. had extreme limitations in the domain of Interacting and Relating with Others. The ALJ found that J.C.G. had marked limitations in this domain in light of his "past problems with interaction, fighting and being suspended from classes." (R. 29). Abraham argues that while this finding is correct, the ALJ did not place enough weight on the number of times JCG was suspended and the severity of the fighting that took place. It is not for the undersigned to re-weigh the evidence. I may only to determine

10

whether substantial evidence supports the finding that the limitation is marked and I find that it does.

In light of the foregoing, it is determined that substantial evidence supports the ALJ's findings that the only domain in which J.C.G. has marked limitations is Interacting and Relating with Others and that there are no domains in which he has extreme limitations.

## Conclusion

Accordingly, IT IS RECOMMENDED that Abraham's appeal be DENIED WITH PREJUDICE.

Under the provision of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORTWITHIN FOURTEEN (14) BUSINESS DAYS FROM THE DATE OF ITS**

11

SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN
ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL
FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 2
day of July 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE